Victor L. CORMIER, Plaintiff,

v.

Ann LITTLEFIELD, Terry Hart, and Nicholas Wagner, in their capacity as Selectmen for the Town of Princeton, and Walter Zimmerman (sic), James Whitman and Andy Olson (sic), in their capacity as Commissioners of the Princeton Municipal Light Department, and Sharon A. Staz, in her capacity as Manager of the Princeton Municipal Light Department, and the Town of Princeton—Princeton Municipal Light Department, Defendants.

No. Civ.A. 98–40042–NMG.

United States District Court,
D. Massachusetts.

Sept. 21, 2000.

Jeffrey A. Aveni, Cronin, Dombrowski & Aveni, Leominster, MA, for Victor L. Cormier.

Carey H. Smith, Morrison, Mahoney & Miller, Worcester, MA, for Ann Littlefield, Terry Hart, Nicholas Wagner.

Carey H. Smith, Morrison, Mahoney & Miller, Worcester, MA, Vincent L. DiCianni, Thomas J. Mango, Rubin and Rudman LLP, Boston, MA, Nicholas J. Scobbo, Ferriter, Scobbo, Sikora, Caruso & Rodophele, Boston, MA, for Walter Zimmerman, James Whitman, Andy Olson, Sharon A. Staz.

Thomas J. Mango, Rubin and Rudman LLP, Boston, MA, Nicholas J. Scobbo, Ferriter, Scobbo, Sikora, Caruso & Rodophele, Boston, MA, for Town of Princeton, Princeton Mun. Light Dept.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff, Victor L. Cormier ("Cormier") charges disability discrimination against his employer, the Princeton Municipal Light Department ("the Light Department"), and the Town of Princeton ("the Town").[1] He alleges violations of (1) the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12111 *et seq.*, (2) the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, (3) the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("the FMLA") and (4) M.G.L. c. 151B ("Chapter 151B"). Pending before this Court are motions for summary judgment by the Light Department (Docket No. 35) and the Town (Docket No. 39).

## I. Background

In April, 1988, Cormier began working as a lineman for the Light Department. As part of his duties he was required periodically to climb poles, wind towers and in and out of bucket trucks, as well as to perform other physical tasks. On June 23, 1996, he suffered a knee injury while off duty from work. In accordance with the recommendation of his physician, his supervisor, Sharon Staz ("Staz"), placed him on light duty, on which he remained from June 26, 1996 until August 20, 1996.

On August 21, 1996, Cormier underwent reconstructive knee surgery. His doctors advised him that he would need four to five months to rehabilitate his knee. Cormier informed the Light Department that he would need that time off from work and to be on light duty when he returned. Staz informed Cormier that his job would remain open until he returned from rehabilitation.

In early January, 1997, Cormier's physician notified Staz that Cormier could return to work on light duty. He also told her that he expected Cormier to achieve full and complete recovery by February 21, 1997, at which time he could return to work without restrictions. Staz informed Cormier that he could not return to work until he was ready for full duty. On January 9, 1997, Cormier received notice from the Light Department that there was no longer a position available for him.

Cormier's recovery proceeded more quickly than his doctor had anticipated and he ultimately received medical approval to return to work without restrictions on January 27, 1997. By March 17, 1997, Cormier had regained complete function of his knee with a full range of motion and no complications.

Several months after he was terminated, Cormier obtained a position with the Hudson Light Department and thereafter a

---

1. Initially, Cormier also asserted claims against three individual Town Selectmen, three Light Department Commissioners and the Manager of the Light Department. On July 1, 1998, this Court dismissed all counts against those individual defendants.

position with another municipal light department. He was not under any restrictions while working in those jobs. Cormier admits that he has not experienced any problems with his knee since March 1997 and has not required any medical attention since that time.

## II. Discussion

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. The Town's Summary Judgment Motion

Cormier assents to the entry of summary judgment for the Town. He was an employee of the Light Department, not of the Town, and it was the Light Department, not the Town, that made decisions and took action with respect to his employment. The Town is a legally separate entity from the Light Department and is not liable for Cormier's claims.

### B. The Discrimination Claims

As this Court has previously noted, the standards under the ADA, the Rehabilitation Act and Chapter 151B are substantially similar and should be treated together for purposes of the pending motion. *See Cormier v. Littlefield*, 13 F.Supp.2d 127, 130 (D.Mass.1998).

■ The Light Department argues that Cormier is not entitled to the protections of the ADA and other statutes because he does not suffer from a disability.

The ADA prohibits an employer from discriminating against a qualified individual on the basis of a disability. *See* 42 U.S.C. § 12112(a). Not all physical impairments rise to the level of disability under the ADA. Rather, under the ADA, the term "disability" is defined as either:

(1) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual,

(2) a record of such impairment, or

(3) being regarded as having such an impairment.

*See* 42 U.S.C. § 12102(2)(A)–(C). Cormier does not allege that he had a record of impairment.

In determining whether an individual is substantially limited in a major life activity, courts assess three factors:

(1) the nature and severity of the impairment,

(2) the duration or expected duration of the impairment, and

(3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

Cormier's injury lasted for approximately seven months. By January 27, 1997, he was able to work without restrictions. Cormier has fully recovered from his injury, regaining complete function with a full range of motion and no complications. His

injury has not resulted in any long-term or permanent impact on his life. He has not required any medical attention since March, 1997 and he was employed by another municipal light departments, working without limits, within several months after his termination from the Light Department.

The EEOC's interpretive guidance on the ADA states that:

[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza.

29 C.F.R. Pt. 1630.2(j), App.

This Court concludes that Cormier's knee injury, which was of a temporary nature, did not substantially limit his life activities and is thus not a "disability" as defined under the statutes at issue. Other courts have determined that plaintiffs did not suffer from disabilities in similar circumstances. *See Evans v. City of Dallas,* 861 F.2d 846, 852–53 (5th Cir.1988) (holding that plaintiff with a knee injury which required surgery was not a qualified individual with a handicap within the meaning of the Rehabilitation Act, given the transitory nature of the injury); *Kramer v. K & S Associates,* 942 F.Supp. 444, 446 (E.D.Mo.1996) (broken leg which healed completely in approximately six months with little or no long term effects did not constitute a disability within the meaning of the ADA); *Dodgens v. Kent Mfg. Co.,* 955 F.Supp. 560, 564 (D.S.C.1997) (torn knee ligament did not substantially limit plaintiff's major life activities and was not a disability).

■ Finally, no reasonable jury could find that the Light Department regarded Cormier as being disabled. The evidence merely shows that the Light Department was unwilling to keep Cormier's position open until he was able to return to full duty without restrictions. There is no evidence that the Light Department considered Cormier to suffer from an impairment that would substantially limit his life activities beyond February 21, 1997. Cormier's physician informed Staz that Cormier would be able to return to work on February 21, 1997 with no restrictions and there is no indication in the record that the Light Department believed otherwise. The fact that the Light Department terminated Cormier because his injury prevented him from performing the duties of his job does not mean that the Light Department regarded him as disabled. *See Kelly v. Woodridge Park Dist.,* 1999 WL 203020 at *5 (N.D.Ill. Mar.31, 1999), citing *Byrne v. Board of Educ.,* 979 F.2d 560, 567 (7th Cir.1992) ("[A]n employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job.").

Because it is clear that Cormier did not suffer from a disability, it is unnecessary to analyze the other elements of the *prima facie* case or to consider whether the Light Department offers sufficient, non-discriminatory reasons to explain Cormier's termination.

### C. The FMLA Claim

■ Congress enacted the FMLA to enable employees to take leave from employment for medical reasons. *See* 29 U.S.C. § 2601(b). In order to establish a *prima facie* case under the FMLA the plaintiff must prove that:

1) he is protected under the FMLA,

2) he suffered an adverse employment decision, and

3) either he was treated less favorably than an employee who had not requested FMLA leave or the adverse decision was made because of his request to leave.

*Santos v. Shields Health Group,* 996 F.Supp. 87, 91 (D.Mass.1998) (citations omitted).

An eligible employee is entitled to a total of 12 work weeks of leave during a 12 month period. *See* 29 U.S.C. § 2612(a)(1). Cormier went on leave due to his knee surgery on August 21, 1996. The 12–week period during which it was required that Cormier's position remain available expired on or about November 21, 1996. Yet the Light Department accommodated him by giving him an additional seven weeks of leave. He was terminated on January 9, 1997.

■ An employer is not required to hold an employee's position open beyond the 12–week period when that employee is unable to return at its expiration. *See Donnellan v. New York City Transit Auth.,* 1999 WL 527901 at *5 (S.D.N.Y. July 22, 1999). If at the end of the FMLA leave period,

> the employee is unable to perform an essential function of the position because of a physical or mental condition, ... the employee has no right to restoration to another position under the FMLA.

29 C.F.R. § 825.214(b).

The earliest Cormier would have been able to return to work was January 1997, well beyond the 12–week period of leave authorized by the FMLA. Thus, Cormier does not have an actionable FMLA claim against the Light Department.

■ Cormier complains that he was not aware of the FMLA and that he was never given written notice as to when his leave under the FMLA commenced as is required under 29 C.F.R. § 825.208.

A private right of action does not exist for a violation of that notice provision. *See Jessie v. Carter Health Care Ctr.,* 926 F.Supp. 613, 617 (E.D.Ky.1996) (no private right of action where employer failed to post notice of employees' rights under the FMLA). Moreover, Cormier was not injured by any insufficiency in notification because he received more leave than that to which he was entitled under the FMLA and he was unable to perform the functions of his position at the expiration of the

12–week period. *See Santos v. Shields Health Group,* 996 F.Supp. 87, 93 (D.Mass. 1998).

## ORDER

For the foregoing reasons, the motions for summary judgment by the Light Department (Docket No. 35) and the Town (Docket No. 39) are hereby **ALLOWED. So ordered.**