# United States Court of Appeals
## For the First Circuit

---

No. 99-1930

BARRINGTON COVE LIMITED PARTNERSHIP,

Plaintiff, Appellant,

v.

RHODE ISLAND HOUSING AND MORTGAGE FINANCE CORPORATION,
RHODE ISLAND HOUSING TRUST FUND AND RICHARD H. GODFREY, JR.,
PERSONALLY AND IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF THE
RHODE ISLAND HOUSING AND MORTGAGE FINANCE CORPORATION,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

---

Before

Lynch, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Fred A. Kelly, Jr., with whom Jeffrey S. Brenner and Nixon Peabody LLP were on brief for appellant.
Allen P. Rubine, with whom Melissa M. Horne and Winograd, Shine & Zacks, P.C. were on brief for appellees.

---

April 5, 2001

**CYR, <u>Senior Circuit Judge</u>**.  Barrington Cove Limited Partnership ("Barrington") appeals from a district court order which dismissed its civil rights action against the Rhode Island Housing and Mortgage Finance Corporation (RIHMFC) for allegedly violating its constitutional rights to substantive due process and equal protection by denying federal income tax credits needed to finance its construction of a housing project for lower-income families.  We affirm.

**I**

**<u>BACKGROUND</u>**

RIHMFC, an agency established by the State of Rhode Island to foster development of low-to-moderate-income housing, also administers the federal lower-income housing tax credit program in Rhode Island.  <u>See</u> 26 U.S.C. § 42 <u>et</u> <u>seq.</u>  During 1996, RIHMFC was authorized to award approximately $1.7 million in federal tax credits to qualified private developers of lower-income housing.  Under its Rules and Regulations and Qualified Action Plan [hereinafter: "Regulations"], RIHMFC allocates these federal tax credits in accordance with various criteria, such as project design, site location and overall construction costs. The Regulations require that RIHMFC employ the same application procedures in relation to for-profit and non-profit developers.

2

See Regulations at § 5 (setting application fee at $500 and 2% of tax credit requested).

In 1996, Barrington, whose general partner is a company owned by a Massachusetts resident, constructed an apartment building for lower-income residents in Barrington, Rhode Island, and submitted an application to RIHMFC for federal income tax credits. Its application was awarded more points than any other application under the criteria prescribed by the Regulations, resulting in a $519,536 federal tax credit.

In order to minimize its resort to RIHMFC resources, however, Barrington explicitly represented in its RIHMFC application that it also expected to receive from the National Park Service $100,000 in historic restoration tax credits in connection with the lower-income apartment project. Although Barrington had begun construction on the project before its application for National Park Service historic restoration tax credits was processed, it had been assured — informally — that RIHMFC would "work with" Barrington in the event the historic restoration tax credits failed to materialize. After construction had advanced to the point that abandonment of the project would have resulted in a substantial financial loss to Barrington, the National Park Service rejected the application for historic restoration tax credits, thereby effectively

rendering the project financially unsound.

In due course, Barrington applied for an additional $100,000 federal income tax credit to offset its failure to obtain the National Park Service historic restoration tax credit. Initially, RIHMFC and defendant-appellee Richard Godfrey, Jr., its executive director, were unreceptive, with Godfrey stating not only that Barrington ought not receive "another dime" from RIHMFC, but that it should be left "holding the bag" and absorb the loss. Nevertheless, on December 11, 1996, RIHMFC awarded Barrington an additional $122,000 in federal income tax credits, provided its individual contractors agreed to make a $366,000 charitable contribution to the Rhode Island Affordable Housing Trust Fund.[1]

Meanwhile, however, on November 20, 1996, another developer, Gemini Hotel, had "remitted" to RIHMFC its $253,462 federal income tax credit allocation for 1996, in return for a commitment from RIHMFC that Gemini Hotel would receive federal income tax credits the following year. The Gemini Hotel

---

[1]The trust fund was established by the State of Rhode Island to receive charitable contributions in aid of goals consistent with RIHMFC's statutory mission of fostering lower-income housing. See R.I. Gen. Laws § 42-55.1-1 et seq. The trust fund is administered by the appellees. Ostensibly, the $366,000 charitable contribution represented RIHMFC's estimate of one-half the equity in the project attributable to the $122,000 supplemental federal tax credit.

"refund" was more than enough to fund all pending applications for supplemental 1996 federal income tax credits, including that submitted by Barrington.  Thus, the statement Richard Godfrey, Jr. allegedly made to Barrington — that Barrington's "charitable contribution" was essential in order that other qualified lower-income housing project developers not be denied additional federal income tax credits in 1996 — was knowingly false.

Furthermore, Barrington later learned that RIHMFC had allocated additional federal income tax credits to several developers in 1996, all of which (unlike Barrington) were non-profits sponsored by Rhode Island residents.  Yet those developers were not required to make a charitable contribution.

Thereafter, in December 1997, Barrington sought to determine why it was the only developer seeking additional 1996 federal income tax credits which was required to make a charitable contribution.  Although Godfrey offered no explanation, he ventured the opinion that Barrington should not have received additional federal income tax credits in the first place.  Finally, in May 1998, prior to its tax deadline, Barrington reluctantly disbursed $323,172 to the Rhode Island Affordable Housing Trust Fund in order to obtain the necessary federal income tax credit documentation from RIHMFC.

In due course, Barrington filed its ten-count complaint

5

against RIHMFC and Godfrey in Rhode Island Superior Court, which RIHMFC removed to federal district court.  Count one alleges that RIHMFC and Godfrey, by requiring a charitable contribution, exceeded and abused their statutory and regulatory authority under the Regulations relating to the imposition of application fees. Counts two through nine allege that the defendants thereby violated Barrington's federal and state constitutional rights to equal protection and substantive due process.  Finally, count ten asserts an unjust enrichment claim under Rhode Island law.

After RIHMFC and Godfrey moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a magistrate judge recommended that the district court dismiss, with prejudice, counts two through nine and that the pendant state-law claims in counts one and ten be dismissed, without prejudice.  The district court adopted the report and recommendation and Barrington appealed.

## II

### DISCUSSION

A. **The Standard of Review**

We review Rule 12(b)(6) dismissals de novo, accepting all factual allegations in the amended complaint as true and drawing all reasonable inferences favorable to the appellant. Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 443 (1st Cir.

6

2000). We are to affirm the district court ruling only if it clearly appears that Barrington cannot recover on any viable legal theory, given the facts alleged in its amended complaint. Id. Although we construe all well-pleaded allegations liberally at this stage in the proceedings, see, e.g., Barrios-Velazquez v. Asociacion, 84 F.3d 487, 490 (1st Cir. 1996); see also Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (rejecting heightened pleading requirements for civil rights claims), we do not credit conclusory assertions, subjective characterizations or "outright vituperation." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992); see also Judge v. Lowell, 160 F.3d 67, 72 (1st Cir. 1998).

## B. The Substantive Due Process Claim

First, Barrington argues that its amended complaint stated a viable claim that the $323,172 "charitable contribution" demanded by RIHMFC violated its substantive due process rights under the federal and state constitutions. In order to prevail against a motion to dismiss a substantive due process claim under Rule 12(b)(6), however, it was essential that the complaint either (i) allege that RIHMFC deprived Barrington of a cognizable "property interest," i.e., its right to acquire additional federal income tax credits without being

required to pay an application fee in excess of that expressly required by the Regulations, <u>or</u>, failing that, (ii) allege that Barrington's conduct was so egregious as to "'shock[] the conscience.'" <u>Cruz-Erazo</u> v. <u>Rivera-Montanez</u>, 212 F.3d 617, 622 (1st Cir. 2000) (citation omitted); <u>Coyne</u>, 972 F.2d at 443 (citation omitted); <u>L.A. Ray Realty</u> v. <u>Town of Cumberland</u>, 698 A.2d 202, 211 (R.I. 1997) (adopting federal test). As Barrington failed to plead various essential allegations, the district court correctly dismissed the substantive due process claims. We explain.

1. **<u>The Alleged "Property Interest" in the Tax Credits</u>**

First, we consider whether Barrington held a cognizable "property interest" in further federal income tax credits. In order to qualify for "substantive due process" protection, an alleged "property interest" in a governmental benefit must consist of something more than either (i) "an abstract need or desire" for the governmental benefit, or (ii) a mere "unilateral expectation" that the claimant deserves it. Thus, Barrington needed to allege facts demonstrating a "legitimate claim of <u>entitlement</u>" to the supplemental tax credits. <u>Board of Regents</u> v. <u>Roth</u>, 408 U.S. 564, 577 (1972) (emphasis added); <u>Coyne</u>, 972 F.2d at 443; <u>Reed</u> v. <u>Village of Shorewood</u>, 704 F.2d 943, 948 (7th Cir. 1983) (observing that a cognizable property interest

8

"is what is securely and durably yours under state [or federal] law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain") (emphasis added).

Since the Regulations ultimately vest in RIHMFC the absolute discretion to determine whether federal income tax credits are awarded to an applicant, see Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000) (noting that "property interest" is defined not by Federal Constitution, but by independent sources such as state law or regulations), Barrington can lay claim to no cognizable "property interest" in the "promised" federal income tax credits. See, e.g., DeHarder Inv. Corp. v. Indiana Hous. Fin. Auth., 909 F. Supp. 606, 613-14 (S.D. Ind. 1995) (addressing identical statutory scheme in 26 U.S.C. § 42, as applied and administered by State of Indiana).

As the DeHarder court aptly noted, the federal statute simply mandates that states promulgate their own allocation plans regarding these federal income tax credits, without identifying any particular condition under which the states are obligated to allocate them. Id. at 614; see also City of Santa Clara v. Andrus, 572 F.2d 660, 676 (9th Cir. 1978) ("'[A] statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the

9

benefit must be granted or if the statute sets out the only conditions under which the benefit may be denied.'") (citation omitted).

Like the state plan in DeHarder, the Regulations simply prescribe the criteria for assessing the comparative deservedness of competing applicants for any federal income tax credits allocated to Rhode Island. See Davila-Lopes v. Zapata, 111 F.3d 192, 195 (1st Cir. 1997) ("The [mere] existence of a detailed set of procedural rules is clearly inadequate to create a constitutionally protected property right."). Moreover, none of these prescribed criteria, many of which necessarily entail highly subjective assessments, are susceptible to objective quantification.

Accordingly, even if RIHMFC were to assign its highest rating to an application following a preliminary assessment of its criteria, the RIHMFC plan expressly accords the agency the discretion to withhold federal income tax credits from any applicant, albeit a high scorer. See DeHarder, 909 F. Supp. at 613-14 ("Although [federal law requires that] certain selection criteria must be included in [the State] plan, no specific directives mandate how the [State] Authority must weigh or consider those criteria. In other words, once the criteria are considered, no particular outcome necessarily follows."); see

10

also Coyne, 972 F.2d at 443 (noting that "property interests" normally wane as governmental regulation waxes). Thus, under the governing regulatory scheme, Barrington never acquired a "legitimate claim of entitlement" to supplemental federal income tax credits. Roth, 408 U.S. at 577.

Barrington attempts to distinguish DeHarder on the ground that the Regulations contemplate that each applicant is to be assigned a set number of points, provided its proposed project meets certain criteria, and that Barrington was far and away the high scorer in this instance; a status which it retained even after failing to win a National Park Service "historic restoration" tax credit. Be that as it may, neither the federal tax code nor the Regulations required RIHMFC to award federal income tax credits to the high-scoring applicant.

Rather, the Regulations expressly preserve to RIHMFC "the right to rescind reservations of tax credits for projects in the event that [RIHMFC] determines that the project is infeasible as proposed or a change of circumstances materially altered the proposal as submitted and approved." See Regulations § IV(A). The quoted provision severely undermines Barrington's contention that it was "entitled" to, thus possessed a property interest in, the 1996 federal income tax credits. Indeed, Barrington acknowledged as much before the

11

district court, by noting that "[t]here is no regulation that says that anyone is entitled to any number or a certain number of credits." As eligibility simply cannot be considered synonymous with entitlement, its substantive due process claim is fatally flawed.

## 2. The "Shock the Conscience" Element

Nor is the "shock the conscience" element in the substantive due process test met on the basis of the motivation RIHMFC allegedly harbored in demanding the charitable contribution. See Cruz-Erazo, 212 F.3d at 622 (explaining that state action "shocks conscience" only if it is "arbitrary and capricious," "run[s] counter to 'the concept of ordered liberty'" or "'violat[es] universal standards of decency'") (citations omitted). Assuming arguendo that the charitable contribution violated the Regulations, mere violations of a state regulatory scheme are not the stuff of which substantive due process claims are constituted. See Coyne, 972 F.2d at 444 ("It is bedrock law in this circuit[] . . . [] that violations of state law – even where arbitrary, capricious, or undertaken in bad faith – do not, without more, give rise to a denial of substantive due process under the U.S. Constitution.").

Additionally, although the comments Godfrey allegedly made about Barrington might be characterized — arguably and at

12

worst — as harsh, callous or impolitic, see supra Section I, we have held on numerous occasions that far more egregious utterances by state officials did not satisfy the "shock the conscience" standard. See, e.g., Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 532 (1st Cir. 1995) ("[T]he threshold for alleging such [verbal-based] claims is high."); Santiago-de-Castro v. Morales-Medina, 943 F.2d 129, 131-32 (1st Cir. 1991) (same). Moreover, the Supreme Court itself has been chary about invoking the "shock the conscience" test, lest all policymaking at the state level become routine grist for substantive due process litigation in the federal courts. See Collins v. City of Harker Heights, 503 U.S. 115, 128-29 (1992). Thus, the substantive due process claims were properly dismissed.

## C.   The Equal Protection Claim

Barrington contends that it alleged a viable "selective treatment" claim to the effect that appellees violated its equal protection rights under the United States and Rhode Island constitutions by requiring the $323,172 charitable contribution, since no other developer attempting to obtain additional 1996 federal income tax credits was required to make a contribution. See Yerardi's Moody St. Rest. & Lounge, Inc. v. Board of Selectmen, 932 F.2d 89, 94 (1st Cir. 1991); Rhode Island Depositors Econ. Prot. Corp. v. Brown, 659 A.2d 95, 100 (R.I.

13

1995) (federal and Rhode Island equal protection standards coterminous).

Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985). In order to establish its claim, however, Barrington needed to allege facts indicating that, "compared with others similarly situated, [it] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (emphasis added; citations omitted).[2]

## 1.    The "Similar Situation" Standard

In determining that the amended complaint failed the "similarly situated" test, the district court faulted Barrington for failing to allege, inter alia, whether its coapplicants (i) received supplemental federal income tax credits due to their failure to obtain the historic restoration tax credits which

---

[2]Barrington has not alleged that any other fundamental constitutional right was violated by appellees in this regard. See Batra v. Board of Regents, 79 F.3d 717, 721 (8th Cir. 1996) (noting that equal protection claim need not allege violation of a fundamental or constitutional right, but may allege intentional discrimination for any illegitimate reason).

14

were a prerequisite to their initial RIHMFC allocation, or (ii) commenced construction prior to confirmation of all the financing required to construct their respective projects, or (iii) would have failed to complete construction absent an additional award of federal income tax credits from RIHMFC. See Samaad v. City of Dallas, 940 F.2d 925, 941 n.31 (5th Cir. 1991) (noting that an adequate "similarly situated" allegation is essential to a viable equal protection claim).

Barrington insists that its amended complaint surmounted the Rule 12(b)(6) dismissal threshold in that it states unequivocally that Barrington and its coapplicants were "similarly situated," whereas the district court expected Barrington to allege each and every pertinent attribute it shared, qua applicant, with its coapplicants. Barrington argues that the amended complaint was adequate because it alleged that Barrington and its coapplicants were similarly situated in one critical respect; i.e., each applied to RIHMFC for an additional 1996 federal income tax credit. On appeal, it contends that the "similar situation" standard adopted by the district court is overly cramped, in that it contemplates such identicality within a particular class as to make it next to impossible to assert a viable equal protection claim.

The formula for determining whether individuals or

15

entities are "similarly situated" for equal protection purposes is not always susceptible to precise demarcation.  See Coyne, 972 F.2d at 444-45 ("[T]he 'line between sufficient facts and insufficient conclusions is often blurred.'") (citation omitted).  As we have explained, however, "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result.  Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples." Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) (citation omitted); see also Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999).

Thus, it was essential that Barrington allege, inter alia, that it and its coapplicants were similarly situated "'in all relevant respects.'"  Dartmouth Review, 889 F.2d at 19 (citation omitted; emphasis added).  Its amended complaint did allege, albeit in conclusory fashion, that Barrington and other "similarly situated" applicants requested supplemental 1996 federal income tax credits, a fact which certainly is material

16

to the present issue.

Yet the issue before us is not only distinct, it is further complicated by the significant characteristics which Barrington alleges it possessed, without any mention whether its coapplicants shared those characteristics. Consequently, at the present stage in the Rule 12(b)(6) analysis, the question reduces to whether it was necessary that Barrington allege these correlations with reasonable particularity. We conclude that it was incumbent upon Barrington to do so, for the following reasons.

First, the complaint included allegations which arguably intimated that Barrington was not similarly situated to other applicants in several important respects. The three factual allegations which gave the district court most concern cannot be dismissed as either incidental or facially inconsequential; i.e., (1) Barrington's original application to RIHMFC for federal income tax credits, which was based on an explicit representation that it would receive the $100,000 historic restoration tax credit; (2) its commencement of construction on the lower-income housing project prior to final confirmation of its financing package; and (3) the financial infeasibility of the project absent either the supplemental federal income tax credits from RIHMFC or the historic

17

restoration tax credits from the National Park Service.

In our view, it would have been entirely reasonable for RIHMFC to consider each of these matters an adequate basis (i.e., dubious business acumen and judgment) for treating the Barrington application differently in the competition for supplemental federal income tax credits. Cf. Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999) ("When all that must be shown by defendant is 'any reasonably conceivable state of facts that could provide a rational basis for the [governmental] classification,' it is not necessary to wait for further factual development [of the record].") (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)); cf. also Almon v. Reno, 192 F.3d 28, 31 (1st Cir. 1999) ("[T]he government need not actually articulate at any time the purpose or rationale supporting its [selective] classification.") (citing Heller v. Doe, 509 U.S. 312, 320 (1993)), cert. denied, 121 S. Ct. 83 (2000).

Second, neither in its amended complaint, nor elsewhere in the record on appeal, is there any indication that the information Barrington would have needed in order to evaluate whether its coapplicants were "similarly situated" in these three important respects was inaccessible, let alone in the sole possession or control of appellees (and hence, reasonably

18

accessible to Barrington only through discovery procedures postdating the Rule 12(b)(6) stage). For that matter, in its appellate brief Barrington relates in exhaustive detail the contents of the RIHMFC applications filed by other applicants. See, e.g., Judge, 160 F.3d at 72 n.3, 77 (mandating specificity in complaint so civil rights claimant cannot "drag a defendant past the pleading threshold" with "baseless claims," or with a "conclusory description[] of a 'general scenario which could be dominated by unpleaded facts'") (emphasis added; citations omitted); Glassman v. Computervision Corp., 90 F.3d 617, 629 (1st Cir. 1996) ("[I]t is plaintiff's responsibility to plead factual allegations, not hypotheticals.") (emphasis added); Futernick v. Sumpter Township, 78 F.3d 1051, 1058 (6th Cir. 1996). Thus, Barrington readily could have alleged sufficient facts in its amended complaint to demonstrate that its co-applicants were similarly situated in the "relevant" respects noted by the district court. See, e.g., Nestor-Colon-Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 43 (1st Cir. 1992). Moreover, exhaustive independent research has disclosed no case authority supporting Barrington's argument.

Finally, the three cases principally relied upon by Barrington are inapposite. See Interboro Inst., Inc. v. Maurer, 956 F. Supp. 188 (N.D.N.Y. 1997); see also Santos v. Shields

19

Health Group, 996 F. Supp. 87 (D. Mass. 1998); X-Men Sec., Inc. v. Pataki, 983 F. Supp. 101 (E.D.N.Y. 1997). Interboro involved a junior college which brought an equal protection claim alleging that state education officials had withheld TAP funding, following an audit, because Interboro is located in downstate New York and primarily enrolls minority students. The district court rejected a motion to dismiss under Rule 12(b)(6), noting that Interboro "has alleged that of all institutions receiving TAP funds, it is the only school audited three times in the past six years, and of those institutions audited more than once during that time frame, all were downstate schools." Interboro Inst., 956 F. Supp. at 200 (emphasis added).

Interboro simply demonstrates that a complaint may survive a Rule 12(b)(6) motion as long as the "similarly situated" prong of the equal protection rubric is satisfied by an allegation that the plaintiff was a member of the class, viz., "all institutions receiving TAP funds," thereby supporting the essential implication that class members are similarly situated in all relevant respects; hence, are qualified to make the further allegation that the discriminatory action must have been predicated on an impermissible ground, i.e., a race-based animus.

Interboro did not consider the implications of a

20

complaint alleging additional facts arguably differentiating the plaintiff in important respects from fellow class members. Id. ("[T]he Court finds that the Complaint alleges sufficient facts to make out a claim for a violation of the Equal Protection Clause.").[3] An equal protection claimant "'may not prevail [against a Rule 12(b)(6) motion] simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus.'" Coyne, 972 F.2d at 444 (citation omitted).[4]

---

[3]Barrington incorrectly asserts that the Second Circuit, see Interboro Inst., Inc. v. Maurer, 152 F.3d 918 (2d Cir. 1998), affirmed the district court's denial of the Rule 12(b)(6) motion. Instead, it affirmed the district court's subsequent post-discovery dismissal of appellees' motion for summary judgment. Interboro Inst., Inc. v. Maurer, 984 F. Supp. 119, 124 (N.D.N.Y. 1997) ("Defendants, in turn, rebut each of . . . [plaintiff's] points."). Moreover, even assuming their right to an immediate appeal, we can discern no indication that the Interboro defendants ever appealed the denial of their Rule 12(b)(6) motion. See, e.g., Camilo-Robles v. Zapata, 175 F.3d 41, 44-45 (1st Cir. 1999) (noting that orders denying motions to dismiss normally are nonfinal, thus not subject to interlocutory appeal).

[4]The two other case citations proffered by Barrington are unavailing as well. See Santos, 996 F. Supp. at 94-95 (holding that there remained a genuine issue of material fact, precluding summary judgment, as to whether defendant treated plaintiff differently than a fellow employee, but defendant never disputed that the two employees were "similarly situated"); X-Men, 983 F. Supp. at 112 (denying Rule 12(b)(6) motion to dismiss equal protection claim where plaintiff, a security guard company, alleged that defendants improperly singled it out due to its affiliation with the Nation of Islam, since it could be inferred from complaint that other applicants for government contract were not so affiliated; but decision rested on "selective

21

## 2. **The "Bad Faith" Allegation**

Although the failure to allege that its coapplicants were "similarly situated" suffices to dispose of its appeal, we note that Barrington's factual allegations regarding RIHMFC's "bad faith" were inadequate as well. See Rubinowitz, 60 F.3d at 909-10; cf. Yerardi's, 932 F.2d at 94 (noting that where plaintiff does not rest "equal protection" claim on alleged violation of fundamental constitutional right, it is essential that it "scrupulously me[e]t" the "bad faith" element of its claim). Once again, cf. supra Section II.B.2, the mere fact that appellees may have violated or abused federal or state regulatory regimes by imposing the charitable contribution requirement upon Barrington, in effect wrongfully imposing an application "fee" in excess of regulatory limits, has no direct bearing on whether appellees violated Barrington's equal protection rights. See Coyne, 972 F.2d at 444 n.7.

Further, the comments Godfrey made about Barrington's loss of the historic restoration tax credits – i.e., Godfrey "wouldn't give the project another dime" and would leave

---

treatment" element, rather that "similarly situated" element, since court never suggested that complaint alleged additional factual attributes of plaintiffs (other than their religious affiliation) which might also differentiate them from other security guard companies which were awarded government contract).

22

Barrington "holding the bag" – are likewise readily explained as rational reactions to the perceived imprudence demonstrated by Barrington in commencing project construction before its entire financing package was in place. Although such an inference is not compelled, and we are to draw all reasonable inferences from the amended complaint in Barrington's favor,[5] the ambiguity of Godfrey's comments unquestionably accentuates the tenuousness of the claim that Barrington was subjected to selective treatment because it is an out-of-state, for-profit organization.

As the discussion in Section II.C.1, supra, affords a sufficient basis for resolving the present appeal, we affirm the dismissal of the equal protection claims.

**III**

**CONCLUSION**

Accordingly, the district court order dismissing the federal claims in counts two through nine, and the order remanding the pendant state-law claims in counts one and ten to the Rhode Island Superior Court, see 28 U.S.C. § 1367(c)(3)

---

[5]RIHMFC implies in its appellate brief that the precise preconditions for its approval of the Barrington credit applications for federal income tax credits (i.e., the so-called commitment letters) were part of the appellate record, even though it conceded at oral argument that the applications were neither appended to the complaint nor incorporated by reference below. Thus, the commitment letters form no part of the basis for our decision. See Bessette, 230 F.3d at 443.

23

(supplemental jurisdiction), are affirmed.  Nothing in this opinion shall be construed as a statement on the merits of the remanded state-law claims.

**Affirmed**.  **Costs** **to** **appellees**.  **So** **ordered**.