United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 28, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 02-30145

UNITED STATES OF AMERICA

Plaintiff - Appellee,

VERSUS

LARRY GLEN WYCHE,

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Louisiana, Shreveport

(00-CR-50085-1)

Before KING, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

## BACKGROUND

Appellant Larry Glenn Wyche ("Wyche") was indicted for conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

(Count One), for aiding and abetting the possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two), and criminal forfeiture under 21 U.S.C. § 853 (Count Three).  On August 30, 2001, after a three-day jury trial, a jury found Wyche guilty of the first count, but was undecided on the second count, and the jury also found that the property described in Count Three was subject to forfeiture.  Wyche now appeals raising several issues. The relevant facts, established at trial are as follows.

Wyche was in the business of putting on rodeos and bull riding contests and raising bucking stock to lease or sell to rodeo proprietors.  The family business, called the Diamond L Ranch and Rodeo Company, operated out of Adair County, Oklahoma, where Wyche lived.

Ernest Mathes, a resident of Doyline, Louisiana, bought methamphetamine from Wyche on five or six occasions beginning in January 1995.  On at least two of those occasions, Wyche met Mathes at an Oklahoma convenience store and sold him one pound of methamphetamine for $20,000.00.  On another occasion they met at an Arkansas convenience store and exchanged $10,000.00 for one-half pound of methamphetamine.  At trial, Mathes testified that he knew methamphetamine was available by calling Wyche and using the code word "bulls" for methamphetamine.  Mathes is not a cattle raiser or rodeo proprietor and has had no association with bulls.

In three phone calls, recorded by the government, in late 1996

2

Mathes asked Wyche whether the bulls were in. In each call, Wyche said they were not in yet but he expected them soon. In a fourth and final call, Wyche gave up on the bulls coming in and said he could not "find nothing to do nothing with."

Sammy Slayter, who testified while awaiting sentencing for possession with the intent to distribute more than 50 grams of methamphetamine, was introduced to Wyche when a man named Kipper Glazer took him and Mathes to buy drugs from Wyche in late 1995. On several of occasions, Slayter sold methamphetamine in Louisiana that Mathes had purchased from Wyche. Slayter received a share of the profit in exchange for a his work selling the methamphetamine.

Starting in 1996 and continuing to 1999, Slayter began traveling to Oklahoma alone to purchase methamphetamine directly from Wyche. Slayter would make the trip every 2-3 weeks and would purchase approximately 4 ounces for approximately $5,000.00. In recorded phone conversations, Slayter and Wyche appeared to use the code word "bulls" for methamphetamine; however, in at least one conversation Slayter, who testified that he liked to ride bulls and occasionally worked for the Diamond L Ranch and Rodeo Company, and Wyche appear to be discussing actual bulls.

David McCarty, who testified while awaiting sentencing on a drug selling conviction, met Wyche through Slayter and purchased drugs from Wyche on three to five occasions. On one occasion Slayter picked up the drugs from Wyche for McCarty.

DEA Agent Michael Hembry testified at Wyche's trial. On

3

cross-examination he conceded that no methamphetamine was found when Wyche's house was searched. On re-direct, the prosecutor asked Agent Hembry whether *any* drugs were found, and Agent Hembry answered yes. Wyche immediately moved for a mistrial. The court denied the motion. Outside the jury's presence, the court stated that Wyche had opened up the subject by asking wether methamphetamine was found, but the court also instructed the prosecution to move on to another subject. The court declined Wyche's request that the jury be admonished because the court believed such an admonishment would be counterproductive and draw more attention to the subject. Then Wyche's lawyer, on re-cross examination had Agent Hembry disclose that the drug found was marijuana and that the agent had no personal knowledge of the finding and that there was no evidence to prove that the substance found was marijuana. At the close of the government's case and at the close of all the evidence, Wyche unsuccessfully moved for judgment of acquittal.

During deliberations, the jury sent a note to the court asking for an explanation of the difference between Counts One and Two of the indictment. The court responded, over Wyche's objection, by giving the jury copies of the relevant statutes. The jury found Wyche guilty of Count One but was undecided on Count Two. The court immediately moved to the forfeiture phase of the trial, and both sides rested on the evidence they had already presented. The

jury found that the property alleged in Count Three was subject to forfeiture.  After the jury verdict, Wyche unsuccessfully moved for judgment of acquittal.

The pre-sentencing report determined a sentencing range to be 188-235 months, and Wyche moved for a downward departure on the ground that his age (then 62) and poor health would mean that he would likely die while in prison.  The district court denied the motion and sentenced Wyche to 212 months in prison and 5 years of supervised release.

On appeal Wyche challenges the sufficiency of the evidence supporting his conviction, the court's giving the statutes to the jury in response to the jury's questions, the denial of his motion for mistrial, the admission of evidence pertaining to phone calls between Wyche and government witnesses, the sufficiency of the evidence supporting the forfeiture, and the refusal of the district court to grant a downward departure to his sentence.

## DISCUSSION

**I. Whether the evidence was sufficient to support Wyche's conviction for conspiracy to possess with intent to distribute more than 50 grams of methamphetamine.**

"In reviewing a challenge to the sufficiency of the evidence, we must determine whether a rational jury could have found that the evidence established guilt beyond a reasonable doubt on each element of the offense, drawing all reasonable inferences from the evidence and viewing all credibility determinations in the light

5

most favorable to the verdict." *United States v. Solis*, 299 F.3d 420, 445 (5th Cir. 2002). "To sustain a conviction for conspiracy under 21 U.S.C. § 841, the government must prove beyond a reasonable doubt: (1) the existence of an agreement between two or more persons to violate narcotics law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." *Id*. at 445 (internal quotations and citations omitted). The jury may infer these elements from circumstantial evidence. *Id*. at 446.

Wyche argues that the evidence shows, at most, the he had a buyer-seller relationship with the witnesses, which is insufficient to prove a conspiracy. The government counters that the evidence shows more than a mere buyer-seller relationship because Wyche sold a substantial amount of drugs in standardized quantities on repeated occasions over an extended period of time to the same individuals who in-turn resold those drugs. According to the government, the jury could infer from this evidence that there was an agreement to possess with the intent to distribute. *See United States v. Berry*, 133 F.3d 1020, 1023 (7th Cir. 1998) (finding "[e]vidence of a conspiracy, as opposed to a buyer-seller relationship, may include transactions involving large quantities of drugs, prolonged cooperation between the parties, [and] standardized dealings . . . .").

Although, evidence of a buyer-seller relationship does not

establish the existence of a conspiracy, this evidence can demonstrate the defendant's role in a conspiracy. *United States v. McKinney*, 53 F.3d 664, 672 (5th Cir. 1995); *United States v. Thomas*, 12 F.3d 1350, 1365 (5th Cir. 1994); *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993). For example, in *Direct Sales Co. v. United States*, 319 U.S. 703 (1943), the Supreme Court upheld the conspiracy conviction of a mail-order wholesale drug corporation that sold morphine to a small-town physician in unusually large quantities, frequently, and over an extended period. *Id*. at 713. The court held that when the evidence shows the defendant was "working in prolonged cooperation" with the distributors in order to "supply [them] with [their] stock in trade . . . [t]he step from knowledge to intent and agreement may be taken." *Id.*

In the present case, the government had evidence of prolonged cooperation by Wyche to supply the witnesses with the stock they needed so they could carry on their drug trade. Therefore, a rational jury could have inferred from the evidence that Wyche was guilty beyond a reasonable doubt and the district court did not err in refusing to grant Wyche's motion of acquittal.

**II. Whether the district court abused its discretion in giving the jury a copy of the applicable statutes and whether this action constructively amended the indictment.**

The Court reviews a challenge to jury instructions only for abuse of discretion. *United States v. Dien Duc Huynh*, 246 F.3d

7

734, 738 (5th Cir. 2001). "A district court has broad discretion in framing the instructions to the jury and this Court will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law." *Id.* (citations omitted). "When a jury expresses confusion and difficulty over an issue the trial court has an obligation to 'clear them away with concrete accuracy.'" *United States v. Carter*, 491 F.2d 625, 633 (5th Cir. 1974) (quoting *Bollenbach v. United States*, 326 U.S. 607, 613 (1946)).

Wyche contends that providing a copy of the relevant statutes confused the jury because it: (1) duplicated what was already instructed; (2) added the unnecessary language in § 846 regarding attempt; and, (3) unnecessarily informed the jury that the conspiracy count would be penalized the same as if it were a substantive count. The government responds that the reason for providing the statutes was to help the jury differentiate between the two counts, conspiracy and aiding and abetting.

Assuming that simply giving a copy of the relevant statute to the jury can be considered a supplement instruction, nothing in those instructions misstated the law. The fact that the statutes provided some extra information concerning attempt and the punishment of conspiracy is irrelevant because the jury was instructed that Wyche could only be convicted of the crimes charged in the indictment. Therefore, the instructions as a whole did

8

reflect the issues and the law in this case and the court did not abuse its discretion.

Further, because Wyche did not allege that the indictment had been amended when the copy of the relevant statutes was given to the district court, we review his claim in this respect for plain error. Again Wyche alleges that by giving the jury a copy of § 846, which makes unlawful conspiracy and attempt, the district court allowed the jury to find him guilty of attempt, a crime not charged in the indictment. The district court, however, never instructed the jury as to attempt but rather stated that Wyche was only on trial for crimes charged in the indictment. The statutes were given to clarify the difference between aiding and abetting and conspiracy, the only issues that the court instructed the jury on. Therefore, the indictment was never amended and hence there can be no plain error.

## III. Whether the district court abused its discretion in denying Wyche's motion for mistrial.

We review the denial of a motion for mistrial on the basis of prosecutorial misconduct for abuse of discretion. *United States v. Castillo*, 77 F.3d 1480, 1497 n.33 (5th Cir. 1996) (citations omitted). The Court must determine whether the prosecutor's remark was improper and if so whether the remark "affected the substantial rights of the defendant." *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999).

Wyche argues that the prosecutor's question about the finding

9

of drugs was improper.  The government responds that the question was invited and even if improper there was no prejudice.

The district court found that the remark concerning the finding of marijuana was not prejudicial and this Court defers to the district court's assessment of prejudice.  *See United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998).  Accordingly, even if the remark was improper, the court found there was no prejudice and also that a cautionary instruction was unnecessary and likely more detrimental.  Therefore, the court did not abuse its discretion in denying Wyche's motion for mistrial.

**IV.  Whether the court abused its discretion in admitting evidence concerning recorded phone conversations between Wyche and the government's witnesses.**

This Court reviews evidentiary rulings for abuse of discretion, and even if this Court finds an abuse of discretion, we review the error under the harmless error doctrine.  *United States v. Sharpe*, 193 F.3d 852, 867 (5th Cir. 1999).

The district court admitted into evidence audio tapes of phone calls between Wyche and the government's witnesses, transcripts of those calls, and a CD-ROM that allowed the jury to read the transcripts contemporaneously while listening to the audio tapes. Wyche contends that admitting the three forms of evidence was cumulative and he had not been provided a copy of the audio tapes until the weekend before the trial and therefore there was a discovery violation and the tapes should not have been admitted.

10

The decision to admit a transcript to aid in understanding an audio recording is within the discretion of the trial court, subject to the issuance of a proper limiting instruction. *United States v. Larson*, 722 F.2d 139, 144 (5th Cir. 1983). The district court gave a limiting instruction that the transcript was only to aid the jury in following the conversation and identifying the speakers and that whether the transcript was correct or incorrect the jury was to make its own determination after listening to the tapes. As to the CD-ROM, the court found it to be an acceptable rendition of the tapes and transcript and a more simplified way to hear the conversation and read the transcript simultaneously. Further, the district court determined that there was testimony that Wyche's counsel had been given the audio tapes earlier than Wyche claimed and moreover there was no prejudice to Wyche in admitting the tapes. Accordingly, having the tapes, transcripts, and CD-ROM was useful and not prejudicial and there was no finding of a discovery violation that prejudiced Wyche and, therefore, the district court did not error in admitting the tapes into evidence.

**V.    Whether the evidence was sufficient to support forfeiture.**

Wyche argues that, for the same reasons the evidence was insufficient to support the conspiracy conviction, the evidence was insufficient to support the forfeiture. Wyche fails to brief any arguments independent from the arguments made that the evidence was insufficient to support the conspiracy conviction. For the same

reasons we rejected his sufficiency challenge to the conspiracy conviction we also reject his sufficiency challenge to the finding of forfeiture.

**VI. Whether the court erred in not granting Wyche a downward departure in his sentence.**

Under 18 U.S.C. § 3742(a), this Court only has jurisdiction to review a failure to depart downward a defendant's sentence if the district court mistakenly believed that it could not depart downward. *United States v. Brace*, 145 F.3d 247, 263 (5th Cir. 1998). Wyche asserts that the district court failed to recognize that age and physical infirmity are "encouraged" bases for departure. The record does not support Wyche's argument. Nothing in the transcript of the sentencing hearing indicates that the court believed it could not depart downward and likewise the government never argued that the court lacked the authority to depart downward. Therefore, the sentence cannot be reviewed.

<u>CONCLUSION</u>

Having considered the record, the parties's briefs and oral arguments, the jury verdict and the decisions of the district court are affirmed. **AFFIRMED**

12