[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11854
Non-Argument Calendar

_____

Agency No. A202-070-129

ROSA MARIA JUAN-FRANCISCO,
YENI L. DIEGO JUAN,

                                        Petitioner - Appellants,

versus

U.S. ATTORNEY GENERAL,

                                        Respondent - Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 5, 2019)

Before WILLIAM PRYOR, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Rosa Maria Juan-Francisco and her daughter, Yeni Diego-Juan, as a derivative beneficiary, seek review of a final order by the Board of Immigration Appeals. The BIA affirmed the Immigration Judge's denial of Ms. Juan-Francisco's claims for her application for asylum and withholding of removal. Ms. Juan-Francisco argues the BIA erred in concluding (1) that she did not suffer harm rising to the level of past persecution; (2) that she failed to establish she was persecuted because of her membership in a particular social group; and (3) that she failed to meet her burden to show she could not reasonably relocate within her home country of Guatemala. Because we agree with the BIA's analysis, we affirm.

## I

Ms. Juan-Francisco and her daughter are natives and citizens of Guatemala. In 2015, they entered the United States without inspection, and in 2016 they became subject to removal proceedings by the Department of Homeland Security. At a master calendar hearing on June 8, 2016, the IJ found each of them was removable as charged. Ms. Juan-Francisco timely filed an application for asylum and withholding of removal based on her race, political opinion, or membership in a particular social group, and for protection under the Convention Against Torture. Her attorney identified her particular social group as indigenous Guatemalan women who are threatened into forced relationships. In support of her application, Ms. Juan-Francisco submitted a psychological report and country condition documents.

2

At a 2017 hearing regarding her claims, Ms. Juan-Francisco testified that in May of 2014, a man in Guatemala harassed her verbally and told her she had to be his wife. She did not recognize the man and was unable to learn his identity. She testified that when she encountered the same man in July of 2014, he held her hand and again told her she had to be his wife. In March of 2015, the man threatened to kill Ms. Juan-Francisco if she did not agree to be his wife. He somehow obtained Ms. Juan-Francisco's telephone number and began to call her as many as three times a day. She testified that she fears the man will kill her if she returns to Guatemala.

The IJ concluded that Ms. Juan-Francisco did not establish her eligibility for asylum. The IJ found that Ms. Juan-Francisco was harassed and threatened by the unidentified man, and believed her to be afraid of returning to Guatemala because of the encounters, but the incidents did not rise to the level of persecution. The IJ also found that Ms. Juan-Francisco had not established that the man targeted her because of her race or political opinion, or that she had identified a cognizable particular social group of which she was a member. Finally, the IJ ruled that Ms. Juan-Francisco had not established that she was unable to reasonably relocate to avoid further problems with the man.

The BIA affirmed the IJ's decision, agreeing that the harm suffered by Ms. Juan-Francisco did not rise to the level of past persecution and that she had not established that she had or would be harmed because of a protected ground. The

3

BIA explained that, although the unidentified man was not required to expressly state the reason for his threats, there was no evidence presented regarding his alleged motives and they could not be inferred from country reports regarding the state of affairs in Guatemala.  The BIA also agreed with the IJ that Ms. Juan-Francisco had not established that she could not reasonably relocate within Guatemala.

## II

We review the decision of the BIA and the decision of the IJ to the extent the BIA expressly adopted or explicitly agreed with the it.  *See Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010) (citing *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009)).  We review legal determinations *de novo* and administrative findings of fact for substantial evidence.  *See id.* (citation omitted). The substantial evidence test is highly deferential and requires us to affirm an agency decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (quoting *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006)). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings," which should occur "only when the record compels a reversal."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

## III

The INA authorizes the Attorney General to grant asylum to any alien determined to be a "refugee" as defined by the statute. *See* 8 U.S.C § 1158(b)(1)(A). A "refugee" is "one who is unable or unwilling to return to his or her home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). To make out an asylum claim, an applicant must establish either past persecution or a well-founded fear of future persecution based on one of these grounds. *See Sama v. U.S. Att'y Gen.*, 887 F.3d 1225, 1231 (11th Cir. 2018). In either case, the applicant must show the persecution is by the government or by non-government groups that the government cannot control. *See Ayala*, 605 F.3d at 948 (citing *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006)). An alien who has not established past persecution has the burden of showing that it would not be reasonable to relocate to another part of the home country to avoid persecution, unless persecution is by the government or is government sponsored. *See Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1223 (11th Cir. 2006) (citing 8 C.F.R. § 208.16(b)(3)(i)).

We address only Ms. Juan-Francisco's claims regarding (a) the nexus between her alleged persecution and protected grounds and (b) her opportunities for relocation within Guatemala, finding them to be dispositive.

5

A

The INA "makes motive critical." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).  Asylum applicants must establish a nexus between one of the protected grounds and the past persecution or well-founded fear of future persecution in order to lay out a claim.  *See Sama*, 887 F.3d at 1231.  Because the nexus element is essential to both past persecution and a well-founded fear of future persecution claims, we address them both together.

Ms. Juan-Francisco's application must be denied because she has failed to show her alleged persecutor was or will be motivated to harm her on account of her race, political opinion, or membership in a particular cognizable social group.  According to Ms. Juan-Francisco's testimony at the hearing, the man's comments appear limited to saying that he wanted her to be his wife and threatening to kill her if she did not agree to become his wife.  Critically, there is no indication that he made any references to the protected grounds listed in her application, and Ms. Juan-Francisco stated she did not know, and the man did not say, why he chose to talk to and focus on her.  She also did not know whether he talked to any other women in a similar way and testified that she had never belonged to any political group.  This testimony does not say or suggest anything about the man's motives.  As a result, it does not compel a reasonable factfinder to conclude that the requisite persecution or fear of persecution because of a protected ground existed.

6

Ms. Juan-Francisco's only apparent evidence that she was persecuted because of her race, political opinion, or membership in a particular social group comes in the form of country condition reports. *See* Pet'r's Br. 4. Ms. Juan-Francisco asserts these materials show that the Maya indigenous group to which she belongs is unique and operates outside of the Guatemalan government and law enforcement, and that women in that community are particularly vulnerable to mistreatment. *See id.* at 5. The materials speak of the high levels of violence against women and of violent conditions in Guatemala generally. They also cover studies related to the violent and unfair treatment of indigenous women and girls around the world.

Ms. Juan-Francisco was not required to point to explicit statements or otherwise provide direct proof about the man's motives in order to demonstrate that she was or will be targeted because of a protected ground. *See I.N.S. v. Elias-Zacarias*, 502 U.S. at 483. But on this record the country reports and articles are not enough.

General lawlessness or discrimination within a particular region or community as described in a country report does not compel a finding that that an applicant was or will be targeted on the basis of a protected ground. *See Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1328 (11th Cir. 2001) (noting that, although a report identified acts of violence and terrorism in Guatemala's civil war, eligibility for asylum does not extend "to anyone who fears the general danger that inevitably

7

accompanies political ferment and factional strife") (citation and internal quotation marks omitted).  *See also Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) (finding that "[m]ere generalized lawlessness and violence between diverse populations . . . generally is not sufficient" to grant asylum) (citation omitted; alterations added).

Country reports "cannot substitute for an analysis of the unique facts of each applicant's case."  *Imelda v. U.S. Att'y Gen.*, 611 F.3d 724, 729 (11th Cir. 2010) (citation omitted) (discussing use of country reports in the context of determining changed country conditions).  And here, Ms. Juan-Francisco has not demonstrated that she was or will be singled out for persecution on account of a protected ground. *See Ruiz*, 440 F.3d at 1259 (concluding that evidence in a country report did not compel reversal of a petition's denial because the petitioners did not demonstrate they would be singled out for persecution); *Sepulveda v. U.S. Att'y Gen.,* 401 F.3d 1226, 1231–32 & 1232 n.7 (11th Cir. 2005) (determining that an applicant's failure to show that she will be singled out for persecution was fatal to asylum claim where the applicant relied on country reports of generalized violence).  Considered together with Ms. Juan-Francisco's testimony that she did not know why the man targeted her, the country condition evidence is not so compelling that a reasonable factfinder would have to conclude the requisite past persecution or fear of persecution on account of a protected ground existed.

B

Even if Ms. Juan-Francisco were able to successfully establish her well-founded fear of future persecution, an applicant who has not established past persecution and seeks asylum on account of future persecution bears the burden of showing that it would not be reasonable for her to relocate, unless the persecution is by the government or is government sponsored. *See Arboleda*, 434 F.3d at 1223 (citing 8 C.F.R. § 1208.13(b)(3)(i)). The applicable regulations identify several considerations that are relevant to the reasonableness determination, including the possibility of serious harm in the place of suggested relocation; ongoing civil strife within the country; and social and cultural constraints, such as gender and social and familial ties. *See id.*

Ms. Juan-Francisco testified that she could not live anywhere else in Guatemala and had to stay in her village. She also stated that neither she nor her husband had any relatives or contacts outside of her town in Guatemala. Her brief asserts that her village was in a portion of Guatemala that is "essentially a separate state," making relocation impossible. Pet'r's Br. 6.

Ms. Juan-Francisco's lack of contacts outside of her village provides some support for the contention that relocation would not be reasonable. But reversing a factual finding by the BIA requires not only that the evidence supports a contrary conclusion, but that it compels one. *See Farquharson v. U.S. Att'y Gen.*, 246 F.3d

9

1317, 1320 (11th Cir. 2001) (citation omitted).  Ms. Juan-Francisco provides no other evidence regarding the difficulty or unreasonableness of relocation. Additionally, the fact that she alleges a fear of persecution by a single private person—not a government group or non-governmental organization with a presence in other parts of Guatemala—arguably cuts against the notion that relocation would be unreasonable.  *Cf. Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1236–38 (11th Cir. 2007) (remanding to the IJ for further review on relocation question where, among other things, the IJ did not appear to consider country reports regarding the guerrilla group FARC's violent activities and extensive presence throughout Colombia).  Given these considerations, Ms. Juan-Francisco's testimony is insufficient to compel a finding that it was unreasonable for her to pursue relocation within Guatemala before seeking resettlement in the United States.

Because we find that there is substantial evidence regarding Ms. Juan-Francisco's inability to connect her alleged persecution to a protected ground and to demonstrate relocation within Guatemala is unreasonable, we do not address her argument that the man's treatment amounted to persecution.

## IV

We **DENY** Ms. Juan-Francisco's petition for review.

10